OPINION OF THE COURT
Jasen, J.
The issue on this appeal is whether a written communication from a school administrator to a tenured teacher which criticizes the latter’s performance or conduct may be made a part of the teacher’s permanent personnel file without affording him an opportunity for a hearing pursuant to section 3020-a of the Education Law.
Two of the proceedings before us involve Jon Holt, a tenured teacher in the Webutuck Central School System, who received two letters from school administrators which were critical of his performance on the job. The first was written by Stephen O’Connell, principal of the Webutuck Junior-Senior High School and Mr. Holt’s immediate supervisor. This letter, dated February 13, 1978, detailed O’Connell’s observation of Holt’s supervision of a “study hall” at the school and stated that Holt had failed to discharge his responsibility to maintain order in the classroom and had disregarded the principal’s request that he correct the problem. The letter concluded by stating that Holt’s actions indicated “incompetence and insubordination” and admonished Holt to make a greater effort in the future. This letter was made a part of Holt’s permanent personnel file.
On March 1, 1978, Holt responded in writing to O’Connell. He indicated his belief that certain statements in the O’Connell letter were factually incorrect, that the February 13, 1978 letter was disciplinary in nature and that such disciplinary action could not be taken without full compliance with both section 3020-a of the Education Law and the applicable provisions of the collective bargaining agreement between the school district and the teachers’ association. He requested that the letter be removed from his personnel file immediately. The letter was not removed, and on May 3, 1978 Holt commenced the first of two CPLR *630 article 78 proceedings challenging the authority of the school district to retain a critical letter in his file.
The second proceeding commenced by petitioner Holt involves a letter written by District Principal Myron Rinds-berg on June 15, 1978. This letter describes Rindsberg’s observation of Holt on June 13, 1978, at which time Holt allegedly interrupted the class of another teacher in disregard of a prior warning not to do so. The letter characterized Holt’s behavior as “unbecoming of a teacher” and “insubordinate”. Holt made no response to this letter, although he apparently had a contractual right to do so. Instead, he commenced a second CPLR article 78 proceeding in the nature of mandamus to compel removal of the letter from his personnel file upon the ground that it constituted an improper reprimand within the meaning of the Education Law.
Both of Holt’s petitions were dismissed by Special Term. The court found in both cases that the school administrators were acting “well within the framework of [their] administrative responsibility in evaluating the performance” of petitioner and held that section 3020-a of the Education Law had no application to such administrative evaluations. On appeal, the Appellate Division, Second Department, affirmed the dismissal of both petitions. This court granted leave to appeal.
The remaining case before us involves Wayne Doyle, a tenured teacher in the Franklinville Central School System. In a letter dated March 15, 1978, William Schubeck, Secondary Principal of the Ten Broeck Academy and Franklin-ville Central Schools, sent a letter to Doyle setting forth several occasions on which Doyle was allegedly absent from his assigned duty station. The letter noted that such absences were in apparent disregard of a prior oral admonition from the principal and urged Doyle to “direct [his] efforts” toward the resolution of the problem. This letter was made a part of Doyle’s permanent personnel file.[1] Doyle later requested that the letter be removed from his *631 file. This request was not honored. As a result, Doyle commenced the instant proceeding seeking an order that the letter be expunged from the file.
Special Term dismissed the petition, relying in part on the decision of Supreme Court, Dutchess County, in the proceedings involving appellant Holt. On appeal, however, the Appellate Division, Fourth Department, reversed. The court stated that “the letter is more a statement of charges than it is an evaluation report” and concluded that the inclusion of the letter in the teacher’s record was a disciplinary act which could only be properly accomplished by resort to the statutory procedures set forth in section 3020-a of the Education Law.
Two Justices of the Appellate Division dissented, agreeing with the reasoning of Special Term in both the Holt and Doyle cases and of the Appellate Division, Second Department, in the Holt case. The dissenters were of the view that the school administrators should be allowed to make critical evaluations of a teacher’s performance without judicial interference. They noted also that if such evaluations were subsequently used against the teacher in a formal disciplinary proceeding, the teacher would then be entitled to the protection of the statutory procedures set forth in section 3020-a of the Education Law. In the absence of such formal disciplinary proceedings, however, the dissenters deemed court review of such critical evaluations to be inappropriate.
In both of the cases before us, the thrust of the teachers’ argument is that the written communications which have become a permanent part of their personnel files are the equivalent of a disciplinary “reprimand” and that such a reprimand can only be issued after formal charges have been preferred against them and after a finding of misconduct has been made in accordance with section 3020-a of the Education Law. We disagree. The documents in issue, critical as they may be of the respective teacher’s job performance, amount to nothing more than administrative evaluations which the supervisory personnel of the school district have the right and the duty to make as an adjunct to their responsibility to supervise the faculty of the schools. *632 In our view, section 3020-a of the Education Law was not intended by the Legislature to apply to such evaluations and does not require a formal hearing as a prerequisite to the inclusion of such documents in the teachers’ personnel file.
At one time, teachers in this State had only so much job security as could be bargained for in their contract of employment. When that contract expired, the decision as to whether or not to continue the teacher’s employment was completely within the discretion of the school district. The Legislature, recognizing a need for permanence and stability in the employment relationship between teachers and the school districts which employ them, enacted a comprehensive statutory tenure system, the purpose of which was to provide some measure of security for competent teachers who had rendered adequate service for a number of years. One of the bulwarks of that tenure system is section 3020-a of the Education Law which protects tenured teachers from arbitrary suspension or removal. The statute has been recognized by this court as “a critical part of the system of contemporary protections that safeguard tenured teachers from official or bureaucratic caprice”. (Matter of Abramovich v Board of Educ., 46 NY2d 450, 454.)
However, while the protection afforded teachers by section 3020-a is quite broad, it should not, in our opinion, be read as insulating tenured teachers from all written critical comment from their supervisors. The purpose of the statute is to protect teachers from arbitrary imposition of formal discipline. It was not intended to interfere with the day-today operation of the educational system in which administrative evaluation of a teacher’s performance plays in important part. Indeed, the interpretation urged by the teachers would result in leaving the school administration with only a choice between oral admonition of a teacher and the initiation of formal disciplinary proceedings. Such an interpretation would provide the administrator with no way of correcting what may be perceived as inadequate performance of the teacher which does not rise to the level of misconduct requiring formal discipline. We believe a broader range of administrative review of a teacher’s performance is both necessary to the efficient management of *633 a modern school system and consistent with the letter and spirit of section 3020-a of the Education Law.
The critical evaluations in issue fall within this permissible range of administrative evaluation. While the language of the administrators’ letters may appear to some to be in the nature of a “reprimand” within the literal meaning of that word, it falls far short of the sort of formal reprimand contemplated by the statute. Although the sharply critical content of the letters is unmistakable, the purpose of such communications — to call to the teacher’s attention a relatively minor breach of school policy and to encourage compliance with that policy in the future — is also clear. The purpose is to warn, and hopefully to instruct —not to punish. Further, the documents in question are issued by a single administrator. While the inclusion of such letters in the teacher’s permanent file may have some effect on his future advancement or potential employability elsewhere, it is by no means as damaging as a formal reprimand issued by the board of education as the result of a determination of misconduct made by an impartial hearing panel. Each letter represents one administrator’s view, not a formal finding of misconduct.
Such an informal warning serves, we believe, as a useful tool to help the administrator correct minor problems before they grow into major ones. Should the school administrator be deprived of this informal means of policy enforcement, one of two situations will ultimately prevail. The school administration must either overlook all minor infractions and allow them to go unremedied if an oral admonition had yielded no results or must initiate a formal disciplinary action to remedy each such infraction. In the first case, a tenured teacher would be allowed free reign to disregard supervisory directives so long as his infraction does not rise to the level of conduct which could result in a formal disciplinary proceeding. In the latter, the teacher would be faced with the spectre of formal proceedings upon any breach of school policy, however small. Surely, the Legislature has not expressly limited a school district to a policy choice between these extremes of permissiveness and strictness. Common sense dictates that another, more moderate, option should be available.
*634 It should be noted that the Commissioner of Education has long recognized the existence of such an option. While the commissioner has expressed the view that summary-discipline such as salary reduction is. improper (Matter of Cadicamo, 15 Educ Dept Rep 274; Matter of Trono, 18 Educ Dept Rep 344), he has consistently held that an administrator may critically comment in writing on a teacher’s performance and that such an evaluation may be included in the teacher’s personnel file without resort to the statutory procedures set forth in section 3020-a of the Education Law. (See, e.g., Matter of Leber, — Educ Dept Rep — [No. 10269, decided May 23, 1980]; Matter of Hirsch, 17 Educ Dept Rep 237.) This interpretation of the scope of a school administrator’s supervisory power is eminently reasonable, and is adopted by this court.
It is argued that the inclusion of critical evaluations in the permanent record of a teacher will lead to abuses which the teacher will be powerless to remedy. We disagree. First, subdivision 7 of section 310 of the Education Law would allow an appeal to the Commissioner of Education should an abusive practice occur. Also, the teachers’ union can negotiate in the collective bargaining process to obtain the right to respond to a critical letter or to have an unfair or inaccurate document removed from a teacher’s file if an arbitrator finds an abuse to have occurred. Finally, as was noted by the dissenters in the Doyle proceeding, no formal disciplinary use can be made of these documents unless and until a timely charge of misconduct is made and the procedural requirements of section 3020-a of the Education Law have been fulfilled.[2]
In sum, we believe that the critical evaluations in issue here were well within the scope of permissible administrative evaluation and were properly included in the personnel *635 files of petitioners without resort to the formal procedures set forth in section 3020-a of the Education Law. Hence, the petitions of John Holt and Wayne Doyle, challenging the authority of school administrators to make and retain such evaluations, should be dismissed.
Accordingly, the order of the Appellate Division in Holt v Board of Educ. should be affirmed and the order of Appellate Division in Doyle v Board of Educ. should be reversed and the judgment of Supreme Court, Cattaraugus County, reinstated.

. The school district contends that Doyle was subsequently offered an opportunity to discuss the problem with his superiors and to make a written response which would be attached to Mr. Schubeck’s letter.

. Of course, such critical evaluations can only be used to support a formal charge of misconduct within three years of the occurrence which the evaluation addresses. (Education Law, § 3020-a, subd 1.) Thereafter, such evaluations can only be used to show that the teacher was given notice of the school district’s dissatisfaction with his performance. This is so because the teacher can be disciplined only for misconduct occurring within the three-year period, and this limitation would be frustrated by the substantive use of such evaluations beyond this time limit.