In the Matter of BOARD OF EDUCATION, YONKERS CITY SCHOOL DISTRICT, Appellant, v YONKERS FEDERATION OF TEACHERS, Respondent.

In September of 1983, a Yonkers High School student died while participating in the district interscholastic football program. Shortly thereafter, it was revealed that this student had not been given the mandated physical examination prior to participation nor had he obtained parental consent to participate. As a result, the student had been allowed to play football despite a serious heart defect that apparently led to his death. The Yonkers Superintendent of Schools then conducted an investigation of the matter which led to the issuance of several letters of reprimand to be placed in the recipients' personnel files. Four of these recipients sought to avail themselves of the grievance procedures established in the collective bargaining agreement which culminates in arbitration of grievances. After proceeding through the initial stages without response from the petitioner board of education, respondent the Yonkers Federation of Teachers served petitioner with notice of its intent to arbitrate this matter on behalf of the four recipients. Petitioner then instituted this proceeding to stay arbitration.

We note at the outset that our examination is limited to a determination of whether a valid and enforceable intent to arbitrate this issue is contained in the collective bargaining agreement (*see, e.g., Board of Educ. v Bellmore-Merrick United Secondary Teachers,* 39 NY2d 167; CPLR 7501). Special Term correctly applied the two-step process for examination of this issue in the context of a public sector labor agreement (*Matter of Acting Supt. of Schools [United Liverpool Faculty Assn.],* 42 NY2d 509). It properly found no bar to arbitration pursuant to the Taylor Law (Civil Service Law, art 14), and that a clear intent to arbitrate this issue was expressed in the collective bargaining agreement between the parties.

The arbitration clause of this particular labor contract defines an arbitrable grievance as follows: " 'Grievance' shall mean any claimed violation, misinterpretation, or inequitable application of the existing Agreement, laws, rules, procedures, regulations, administrative orders, or work rules of the Board or a department thereof; provided, however, that such terms shall not include an action against disciplinary proceedings or any other matters which are otherwise reviewable pursuant to law, or any rule or regulation having the force and effect of law. The denial of tenure is no way to be construed as a grievance".

In *Matter of Board of Educ. v Yonkers Federation of Teachers* (81 AD2d 585), we considered this very same inclusory language

and held it to be broad and to encompass any claimed violation, misrepresentation or inequitable application of the existing *agreement,* laws, rules, *procedures,* regulations, *administrative orders,* or work rules and that any ambiguity was a matter for the arbitrator to resolve. Here, however, petitioner maintains that these letters also fit within the exclusion for "disciplinary proceedings". Yet at the same time, it asserts that the superintendent's action did not require a hearing pursuant to Education Law § 3020-a by equating these letters to those analyzed in *Holt v Board of Educ.* (52 NY2d 625). In that case, however, the Court of Appeals drew a distinction between letters placed in a personnel file which were punitive or disciplinary in character and those which are properly part of the administrative duty to supervise and evaluate teachers. If, as petitioner claims, the letters in the instant matter are similar in character to those in *Holt* and thus only evaluative in nature, then it is for the arbitrator to consider whether petitioner's conduct constitutes a violation, inequitable application, or misinterpretation of the labor agreement, existing procedures or administrative orders (*see, e.g., Holt v Board of Educ., supra,* p 634).

Yet as now Chief Judge Wachtler noted in his separate opinion in *Holt,* "[i]t must be recognized that the content of a letter is of crucial significance; in the absence of that analysis the impact of a letter simply cannot be assessed" (*Holt v Board of Educ., supra,* p 636). Nowhere on this record has petitioner presented us with the letters themselves so that we could determine that these letters may fit within the ambit of the clause excluding arbitration concerning "disciplinary proceedings" (*cf. Matter of Board of Coop. Educational Servs. v Central Council of Teachers,* 96 AD2d 598). Consequently, upon this record we must find that there is a clear and unequivocal agreement to arbitrate this matter and it is not simultaneously covered by an applicable exclusion (*see, e.g., Matter of Acting Supt. of Schools [United Liverpool Faculty Assn.], supra*).

Similarly, we find no merit to petitioner's contention that to allow arbitration of this matter would be against public policy (*see, e.g., Matter of Port Jefferson Sta. Teachers Assn. v Brookhaven-Comsewogue Union Free School Dist.,* 45 NY2d 898; *Matter of Board of Educ. v Jones,* 67 AD2d 537; *Holt v Board of Educ., supra,* p 634).

Petitioner's remaining contentions are either issues for the arbitrator (*Matter of Board of Educ. v Yonkers Federation of Teachers, supra*) or not a proper subject for our review due to petitioner's failure to raise the matter at Special Term (*see, e.g., Matter of Engle v County of Westchester,* 38 AD2d 601; 10, 11

Carmody-Wait, NY Prac §§ 70:300; 72:126). Titone, J. P., Lazer, Thompson and Rubin, JJ., concur.