■ In the Matter of CHAD R. LORY, Petitioner, v COUNTY OF WASHINGTON et al., Respondents. [910 NYS2d 223]—

Egan Jr., J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Washington County) to review a determination of respondent Washington County Sheriff which terminated petitioner's employment with respondent Washington County Sheriff's Department.

In March 2009, pursuant to Civil Service Law § 75, respon-

---

dent Washington County Sheriff's Department charged petitioner with four counts of misconduct arising out of petitioner's employment as a correction officer. The charges stemmed from petitioner's alleged inappropriate dealings with a certain female inmate and alleged violations of Department procedure in that (1) petitioner failed to perform his assigned duties in a professional manner, (2) petitioner failed to obey all lawful orders, (3) petitioner engaged in conduct which tended to undermine the efficiency and discipline within the Department, and (4) petitioner was inattentive to duty. A hearing on the matter was conducted in April 2009. Petitioner was found guilty of all charges, and the Hearing Officer recommended that petitioner be dismissed from his position as a correction officer. Respondent Washington County Sheriff adopted the Hearing Officer's recommendation, and this proceeding ensued.

Initially, we find that, contrary to petitioner's assertions, the violations charged were sufficiently detailed to enable petitioner to prepare an adequate and extensive defense (*see Matter of Rounds v Town of Vestal*, 15 AD3d 819, 822 [2005]), and any references to uncharged conduct found in the determination, including references to additional conduct occurring on February 6 and 8, 2009 in the inmate recreation room, were necessary to refute petitioner's denial of the charge that his attention was diverted from his duties (*see id.*). We are also unpersuaded by petitioner's assertion that charge one was legally insufficient, since the Department was not precluded from instituting charges based on conduct that was the subject of counseling and complaints (*see Matter of Heslop v Board of Educ., Newfield Cent. School Dist.*, 191 AD2d 875, 877 [1993]). We also find that the Hearing Officer's determination is sufficiently detailed, such that petitioner was not deprived of the opportunity to intelligently challenge and obtain adequate judicial review of the same (*see Matter of Langhorne v Jackson*, 206 AD2d 666, 667 [1994]).

In addressing the substance of petitioner's claims, the standard of review to be applied in reviewing an administrative determination made pursuant to Civil Service Law § 75 is whether the determination is supported by substantial evidence (*see Matter of Longton v Village of Corinth*, 57 AD3d 1273, 1274 [2008], *lv denied* 13 NY3d 709 [2009]; *Matter of Peters v County of Rensselaer*, 28 AD3d 854, 854 [2006]; *Matter of Rogers v Sherburne-Earlville Cent. School Dist.*, 17 AD3d 823, 824 [2005]), which means proof "so substantial that from it an inference of the existence of the fact found may be drawn reasonably" (*Matter of Moro v Mills*, 70 AD3d 1269, 1270 [2010]

[internal quotation marks and citations omitted]). We note that credibility determinations are "solely within the province of the Hearing Officer," and this Court may neither substitute its own judgment for that of the Hearing Officer nor weigh the evidence presented (*Matter of Perryman v Village of Saranac Lake*, 64 AD3d 830, 835 [2009]).

In reviewing this record, we find substantial evidence to support the Hearing Officer's determination. The Department presented testimony regarding petitioner's frequent and sometimes disruptive visits to the jail's classroom. Evidence was presented that, during those visits, petitioner's attention was paid to one female inmate in particular. One teacher testified about an incident when petitioner engaged that female inmate in a discussion during class and, after leaving the classroom, telephoned the classroom in an attempt to continue the conversation. Another teacher testified that petitioner would "focus" on that same inmate and seemed "interested" in her. In January 2009, a meeting occurred between petitioner, his captain and lieutenant. While the lieutenant testified that at that time petitioner was orally ordered to refrain from entering the classroom area during class time, petitioner testified that he did not perceive this meeting as a reprimand, but as a casual reminder to be careful regarding his interactions with female inmates. A teacher testified that during either January or February 2009, petitioner advised that he was "not supposed to be [in the classroom]," but that he "[didn't] care about that." On February 24, 2009, petitioner was again warned to stay out of the classroom area during school hours. On February 25, 2009, petitioner was observed in the classroom area during school hours. Thereafter, on February 26, 2009, petitioner was issued a written memorandum of warning.

The Department also presented evidence that, on February 6, 2009, while on duty in the housing unit, petitioner did not respond to telephone and radio calls made by his lieutenant. Video surveillance and testimony revealed that at the time his lieutenant was attempting to contact him, petitioner was in the inmate recreation room and unable to observe the particular jail unit to which he was assigned. The video also depicted numerous instances throughout petitioner's shift wherein he entered the recreation room and remained there with the door closed when that same female inmate was also present inside. On one of these occasions, petitioner permitted another inmate to hold the door closed from the other side. The Department presented testimony that the length of time petitioner spent in the recreation room during his shift was unacceptable and prevented

petitioner from observing other inmates in the unit, which created a risk of, among other things, unsupervised inmates harming themselves or others. Video surveillance taken on February 8, 2009 depicts petitioner in the recreation room with that same female inmate without the lights on. Although petitioner provides explanations for what occurred in the recreation room and he disputes both having had a relationship with the female inmate and having been ordered to stay out of the classroom, such credibility determinations were "within the Hearing Officer's sole province" (*Matter of Rounds v Town of Vestal*, 15 AD3d at 822).

As the evidence supports the Hearing Officer's determination that petitioner's conduct evidenced a lack of professional judgment and posed a serious security risk, we do not find the penalty of dismissal "so disproportionate [to the offenses] as to be shocking to one's sense of fairness" (*Matter of Sindoni v County of Tioga*, 67 AD3d 1183, 1184 [2009] [internal quotation marks and citations omitted]). Finally, under the circumstances of this case, the Hearing Officer did not err in making a penalty recommendation without having first conducted a separate hearing (*see Matter of Finigan v Lent*, 189 AD2d 935, 938 [1993], *appeal dismissed* 81 NY2d 1067 [1993], *lv denied* 82 NY2d 657 [1993]). We have considered petitioner's remaining arguments, and find them to be without merit.

Cardona, P.J., Lahtinen, Kavanagh and McCarthy, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.